**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JAMES JACKSON | CIVIL ACTION 1:16-cv-00870 |
| Plaintiff, | |
| | COMPLAINT |
| v. | |
| BAYVIEW LOAN SERVICING, LLC. | JURY TRIAL DEMANDED |
| Defendant. | |

**COMPLAINT FOR RELIEF PURSUANT TO
THE FAIR DEBT COLLECTION PRACTICES ACT**

NOW COMES the Plaintiff, JAMES JACKSON ("JAMES"), by and through his attorneys, Sulaiman Law Group, Ltd., complaining of the Defendant, BAYVIEW LOAN SERVICING, LLC ("Defendant"), as follows:

**NATURE OF THE ACTION**

1. James brings this action as a consumer to secure redress from unlawful credit and collection practices engaged in by Defendant. James alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA) and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/10a ("ICFA").

**JURISDICTION AND VENUE**

2. This action arises under and is brought pursuant to the FDCPA and ICFA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §1692 (FDCPA), 28 U.S.C. §§1331, 1337, as this action arises under the laws of the United States, and supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C. §1367.

1

3. Venue and personal jurisdiction are proper in this Court pursuant to 28 U.S.C. §1391 because Defendant conducts business in the Northern District of Illinois and Defendant's collection communications and practices impacted James within the Northern District of Illinois.

## PARTIES

4. Plaintiff, James Jackson, is a natural person, who, at all times relevant, owned the property located at 7351 S. Winchester Avenue Chicago, Illinois 60636 ("subject property")

5. James is a "consumer" as defined by the FDCPA, 15 U.S.C. §1692a(3).

6. At all times relevant to the action, Bayview was a limited liability company with its principal place of business located at 4425 Ponce De Leon Boulevard, 4th Floor, Coral Gables, Florida 33146. Defendant transacts business in Illinois. Defendant's Illinois registered agent is Illinois Corporation Service C located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

7. Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6), because it regularly uses the mails and/or the telephone to collect, or attempt to collect, delinquent consumer accounts.

8. At all times relevant to this complaint, the Defendant was collecting on a consumer debt as defined by 15 U.S.C. §1692 a(5).

## FACTS SUPPORTING CAUSES OF ACTION

9. On October 18, 2004, Plaintiffs executed a mortgage and note in the amount of $120,434.00 ("subject loan" or "subject debt") in favor of Contour Mortgage Group, Inc., ("Contour") secured by subject property.

10. Subsequent to the subject loan being issued, Contour transferred subject loan to Wells Fargo.

11. At some point thereafter, James defaulted on the subject debt owed to Wells Fargo.

12. On February 18, 2013, Plaintiff and his wife filed a Joint Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Northern District of Illinois, Case Number 13-06069 ("bankruptcy").

13. Schedule D of the bankruptcy petition listed subject loan, a secured pre-petition debt to Wells Fargo, in the amount of $105,514.00, secured by the subject property. *See* Exhibit A, a true and correct copy of Schedule D filed in Plaintiff's bankruptcy case.

14. By virtue of James listing Wells Fargo as a creditor, the Bankruptcy Noticing Center ("BNC") sent Wells Fargo notice of the bankruptcy filing. *See* attached Exhibit B is a true and correct copy of Certificate of Notice executed by the BNC establishing service of the notice of bankruptcy filing and the Original Plan on Wells Fargo.

15. Plaintiff's Original Plan proposed to treat Wells Fargo's claims as follows:

> "Debtors are surrendering the real property located at 7351 S. Winchester Avenue, Chicago, Illinois to Wells Fargo Home Mortgage in full satisfaction of its claims." *Id*. at p. 5.

16. On April 17, 2013, the 341 Meeting of Creditors was held with the Chapter 13 Trustee. No representatives of Wells Fargo appeared at the 341 Meeting of Creditors.

17. On July 17, 2013, Plaintiff's Chapter 13 Plan was confirmed by the Honorable Jack B. Schmetterer. *See* Exhibit C, a true and correct copy of the Confirmation Order.

18. Plaintiff fully performed his duties as set forth in his confirmed Chapter 13 Plan.

19. On November 12, 2014, the Bankruptcy Court entered an Order of Discharge in Plaintiff's case of all dischargeable debts, including the subject loan. *See* Exhibit D, a true and correct copy of the Order of Discharge and BNC Certificate of Notice establishing service of the Order of Discharge upon Wells Fargo.

20. The Order of Discharge expressly states:

"The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor...." *Id.* at p. 2.

21. On November 14, 2014, the BNC served Wells Fargo with the Order of Discharge. *Id.* at p. 3.

22. Pursuant to 11 U.S.C. §524, the Order of Discharge invoked the protections of the discharge injunction prohibiting any acts to collect upon the subject debt by Wells Fargo or its successors or assigns.

23. On January 16, 2015, Plaintiff's bankruptcy case closed.

24. Plaintiff's personal liability on the subject loan was extinguished via his bankruptcy discharge, thus dissolving and terminating the business relationship with Wells Fargo, and any of its successors and assigns.

25. On November 19, 2015, Defendant acquired the servicing rights to the subject debt. *See* Exhibit E, a true and correct copy of the Transfer of Service Notice.

26. Defendant acquired the servicing rights to the subject debt after James was in default on the subject debt and nearly three years after his bankruptcy filing.

27. Defendant had knowledge of the discharged status of the subject debt at the time it acquired the servicing rights to the subject debt from Wells Fargo.

28. After it acquired the servicing rights to the subject debt, and with actual knowledge of Plaintiff's Chapter 13 bankruptcy and his subsequent discharge, Defendant sent a demand for payment on the discharged debt.

29. Specifically, on November 27, 2015, Defendant sent a mortgage statement for the subject debt to James indicating an amount due of $37,145.66. *See* Exhibit F is a true and correct copy of the November 27, 2015 statement sent by Defendant to Plaintiff.

4

30.  The mortgage statement also included a "Delinquency Notice" which advised:

"You are late on your mortgage payments.  Failure to bring your loan current may result in fees and foreclosure – the loss of your home.  As of 11/27/15 you are 1060 days delinquent on your mortgage." *Id*

31.  The mortgage statement also included a payment coupon and directions to make a payment. *Id*

32. Lastly, the mortgage statement stated:

". . . [w]e may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report." *Id.*

33. Defendant, as a sophisticated creditor, should have reasonable systems and procedures in place to identify accounts discharged in bankruptcy.

34. Defendant's collection efforts occurred with actual knowledge of James's bankruptcy filing.

35. Concerned about the violations of his rights and protections afforded by virtue of filing his Chapter 13 case, James sought the assistance of counsel to ensure that Defendant's collection efforts ceased.

36. James has expended time and incurred costs consulting with his attorneys as a result of Defendant's deceptive collection actions.

37. James was unduly inconvenienced and harassed by Defendant's unlawful attempts to collect the discharged subject debt.

38. James suffered from emotional distress by Defendant's unlawful attempts to collect the discharged subject debt as he was led to believe his bankruptcy had no legal effect.

## <u>COUNT I -- VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT</u>

39. James repeats and realleges paragraphs 1 through 38 as though fully set forth herein.

40. Defendant violated 15 U.S.C. §§1692e(2), e(10), f, and f(1) through its debt collection efforts.

41. Defendant violated 15 U.S.C. §1692e(2) when it misrepresented the character, amount, or legal status of the subject debt. The subject debt was not owed at the time Defendant demanded payment of the subject debt because it was discharged in James's Chapter 13 bankruptcy.

42. Similarly, Defendant violated 15 U.S.C. §1692e(10) when it falsely represented that the subject debt was collectable at the time of the demands as the subject debt was not owed by virtue of James's bankruptcy discharge.

43. Defendant violated 15 U.S.C. §1692f by employing unfair and unconscionable means to collect the subject debt as James's obligation to Defendant was discharged in bankruptcy, and thus he did not have a duty or obligation to make the payment demanded.

44. It was inherently unfair and deceptive for Defendant to attempt to collect the discharged subject debt from James, an unsophisticated consumer.

45. It is also inherently deceptive and oppressive for Defendant to induce James into paying a debt that he does not owe by threatening to report his non-payment to the credit bureaus.

46. Given that the underlying subject debt was duly scheduled in James's bankruptcy, Defendant had no legal right to attempt to collect the subject debts from James.

47. Furthermore Defendant violated 15 U.S.C. §1692(f)(1) by attempting to collect an amount not permitted by law as James's obligation to pay the subject debt was extinguished by virtue of his bankruptcy discharge.

48. In doing so, Defendant has shown willful and malicious disregard towards the Bankruptcy Code and the FDCPA.

49. As pled in paragraphs 35 through 38, James has suffered damages as a result of Defendant's unlawful collection practices.

WHEREFORE, Plaintiff, JAMES JACKSON, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a.  declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.  awarding James statutory damages of $1,000 as prescribed by the FDCPA;

c.  awarding actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

d.  awarding James costs and reasonable attorney fees as provided under 15 U.S.C. §1692 and;

e.  awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT II --VIOLATION OF THE ILLINOIS
## CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

50. James restates and realleges paragraphs 1 through 38 as though fully set forth herein.

51. Defendant violated 815 ILCS 505/2 by engaging in an unfair and deceptive act or practice by using fraud, deception, and misrepresentation in its attempt to collect a discharged or otherwise extinguished debt from James.

52. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. 815 ILCS 505/2.

53. James is a consumer as defined by ICFA, 815 ILCS 505/1(e).

54. Defendant's attempt to collect a debt is part of the conduct of any trade or commerce as defined by ICFA, 815 ILCS 505/1(f).

55. Defendant's demand for payment on the subject debt, which was duly scheduled in James's bankruptcy and subsequently discharged, represents the use of deception, fraud and false pretense in an attempt to collect a debt that was not collectable at the time the demands for payment were made by Defendant.

56. It is also inherently deceptive and oppressive for Defendant to induce James into paying a debt that he does not owe by threatening to report his non-payment to the credit bureaus.

57. Defendant had actual knowledge of James's bankruptcy discharge when it attempted to unlawfully collect on the uncollectable subject debt.

58. Defendant intended that James rely on its misrepresentations in its efforts to induce James in paying a debt that he no longer owed and cannot be enforced.

59. ICFA was designed to protect consumers, such as James, from the exact behavior committed by Defendant.

60. ICFA further states:

> Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper. 815 ILCS 505/10a.

61. As pled in paragraphs 35 through 38, James has suffered damages as a result of Defendant's unlawful collection practices.

62. As such, James is entitled to relief pursuant to 815 ILCS 505/10a.

WHEREFORE, Plaintiff, JAMES JACKSON, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. awarding James actual and punitive damages, in an amount to be determined at trial, for the underlying violations;

c. awarding the James costs and reasonable attorney fees;

d. awarding any other relief as this Honorable Court deems just and appropriate.

Dated: January 20, 2016                    Respectfully Submitted,

/s/ Majdi Y. Hijazin, *of Counsel*
Majdi Y. Hijazin
Counsel for Plaintiff
Sulaiman Law Group, Ltd.
900 Jorie Blvd, Ste 150
Oak Brook, IL 60523
Phone (630)575-8181
Fax: (630)575-8188
mhijazin@hijazinlaw.com